IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY L. HUGHES, | ) | Civil Action No. 2:14-cv-00585 |
| | ) | |
| Plaintiff, | ) | United States District Judge |
| | ) | David S. Cercone |
| v. | ) | |
| | ) | United States Magistrate Judge |
| ORLANDO HARPER, WARDEN; SGT. KASS, SGT. COULTER; SGT. NORT; R.N. HUMPHREYS, AND INSPECTOR KEARNS, | ) ) ) ) | Cynthia Reed Eddy |
| Defendants. | | |

**REPORT AND RECOMMENDATION**

**I.    Recommendation**

For the reasons that follow, it is respectfully recommended that the Consolidated Motion Under Fed.R.Civ.P. 12 to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim or For a More Definite Statement filed by the County Defendants be granted in part and denied in part, without prejudice to the filing of a summary judgment motion raising these defenses on a more fully developed factual record.

**II.    Report**

    A.    <u>Relevant and Material Facts</u>

Plaintiff, Gregory L. Hughes ("Plaintiff" or "Hughes"), initiated this action on May 7, 2014, by submitting his complaint and an incomplete motion to proceed *in forma pauperis*. (ECF No. 1). At that time, Hughes was incarcerated at the Allegheny County Jail ("ACJ"). The matter was referred to the undersigned for pretrial proceedings in accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Rules 72.C and 72.D of the Local Rules of Court for the Western District of Pennsylvania.

1

On May 9, 2014, the Court directed Hughes to submit a signed authorization form authorizing payments from his inmate account. On May 20, 2014, Hughes filed his authorization and also notified the Court that he had been released from ACJ and his current address was Renewal, Inc., 339 Boulevard of the Allies, Pittsburgh, PA 15222. On June 24, 2014, the motion to proceed *in forma pauperis* was granted (ECF No. 5), and the complaint was filed. (ECF No. 6).[1] Named as Defendants are Orlando Harper, the Warden of ACJ; Sgt. Kass; Sgt. Coulter; Sgt. Nort; and Inspector Kearns (collectively referred to as the "County Defendants") and R.N. Humphreys, a registered nurse working at the ACJ during the incidents complained of in this lawsuit.[2] It is not clear from the amended complaint whether the defendants are sued in their individual capacities only or in both their individual and official capacities.

On September 10, 2014, the County Defendants filed a motion to dismiss or for a more definite statement. The undersigned granted the motion for more definite statement and ordered Hughes to file an Amended Complaint. Plaintiff then filed a "Motion to Amend Civil Complaint" (ECF No. 33), which despite its title was, in substance, an amended complaint rather than a motion to permit amendment. The Court granted the motion and ordered that the motion be deemed an amended complaint. ECF No. 33 remains the operative complaint.

This case stems from events surrounding four allegedly "illegal" strip searches which Hughes was subjected to during the period December 4, 2012, through December 19, 2012,

---

[1] Even though Hughes does not specifically mention the Civil Rights Act, 42 U.S.C. § 1983 ("Section 1983), in his complaint or amended complaint, it is clear to this Court that Hughes is seeking to vindicate his federal Constitutional rights. However, because Plaintiff does not have a cause of action directly under the Constitution of the United States, nor does he identify another source of a federal right alleged to have been violated or another basis for federal jurisdiction, a liberal reading of both requires the Court to construe both the complaint and amended complaint as invoking the Court's federal question jurisdiction pursuant to 42 U.S.C. § 1983.

[2] Defendant Humphreys has never been served with the complaint. Although service was directed on said Defendant, no service has ever been achieved.

while he was detained at ACJ. Hughes alleges that the defendants, acting together as part of a conspiracy and/or at times alone, participated in some extent in some or all of the following alleged actions: conducting one or more illegal, forceful strip searches and manual cavity searches; engaging in malicious prosecution; retaliation against him by filing a false misconduct report and false criminal charges against him; not responding to his prison grievances; and being detained in the Disciplinary Housing Unit ("DHU") for sixteen (16) days without a disciplinary hearing.

According to the amended complaint, on or about November 2, 2012, Hughes was arrested and "placed" in the ACJ for a probation violation. Upon entering the ACJ, he was subjected to an initial strip search and placed in a holding cell. Hughes does not seem to be objecting to this initial strip search.

Hughes alleges, however, that the four additional strip / cavity searches he was subjected to between December 4, 2012, and December 19, 2012, were "illegal," conducted to harass him, and violated his constitutional rights. The facts surrounding these searches are less than clear. [3] However, according to the amended complaint, on December 4, 2012, Sgt. Kass conducted an "illegal strip search" of Hughes based on a "tip" that Hughes possessed contraband. Approximately, one week later, on December 11, 2012, Sgt. Kass conducted another "illegal strip search" of Hughes. Hughes contends this strip search was in the form of harassment and that both searches were unfounded as he was not found to be in possession of contraband.

The following week, on December 19, 2012, Sgt. Coulter and Sgt. Nort came to Hughes' cell and ordered him to strip, an order Hughes refused. Sgt. Coulter then searched Hughes' cell

---

[3] For example, the amended complaint does not identify Hughes' inmate status at the time of these incidents nor does the amended complaint indicate whether the searches were conducted after Hughes had returned from a court hearing, which is akin to a contact visit that necessitated the strip searches in *Bell v. Wolfish*, 441 U.S. 520 (1979).

and found "a plastic with white substance inside a 'crack-hole' in the corner of the cell's wall." According to the amended complaint, Sgt. Coulter stated to Hughes: "Since you refuse to strip, then we are going to say the drugs are yours!" Hughes was handcuffed and escorted to the ACJ's Infirmary where he was placed in a small cubicle. Sgt. Coulter ordered Hughes to pull down his pants, to which he again refused. "Sgt. Coulter then grabbed [Hughes] in a strong-hold manner and bent me over while Sgt. Nort pulled down my pants. Sgt. Coulter then ordered R.N. Humphreys to conduct an illegal (anal) cavity search on [Hughes'] person. R.N. Humphreys with rubber gloves had stuck his finger into my anus in search for drugs which was unfounded." Amended Complaint at 2.

Hughes was then escorted by Sgt. Coulter and Sgt. Nort to the Disciplinary Housing Unit ("DHU") at ACJ where he was strip searched and placed in a cell. Later that day, he was served with an allegedly "false" misconduct charge, charging him with possession of contraband. The next day, December 20, 2012, Hughes was served with a three-count criminal complaint which charged him with (i) manufacture, delivery or possession with intent to manufacture or deliver in violation of 35 P.S. § 780-113, §§ A30; (ii) intentional possession of controlled substance in violation of 35 P.S. § 780-113, §§ A16; and (iii) possession of controlled substance, contraband / inmate, in violation of 18 P.S. § 5123, §§A.2. *See* Criminal Docket, Court of Common Pleas of Allegheny County, Docket Number: CP-02-CR-0003666-2013.[4]

According to the amended complaint, Hughes was held in the DHU from December 19, 2012, to January 3, 2013, without a disciplinary hearing. On December 21, 2012, Hughes filed

---

[4] Courts are entitled to take judicial notice of public records, such as court records and case docket sheets, in considering a motion for dismissal. *DiNicola v. DiPaolo*, 945 F. Supp. 848, 855 n. 2 (W.D.Pa. 1996).

an administrative grievance against Sgt. Coulter, Sgt. Nort, and R.N. Humphreys for the "erroneous and falsified misconduct and their alleged conduct of illegal searches."

Hughes alleges that the actions of Defendants "Sgt. Kass; Sgt. Coulter; Sgt. Nort; Inspector Kearns; and R.N. Humphreys" violated his rights under the Fourth and Eighth Amendments. He further alleges that the actions of "Inspector Kearns; Warden Orlando Harper; and Michael Opferman" violated his rights under the Fourteenth Amendment.

The County Defendants have filed a Motion to Dismiss (ECF No. 36) arguing that the amended complaint should be dismissed for failure to state a claim. Hughes has responded in opposition (ECF No. 38), to which the County Defendants have filed a Reply (ECF No. 39). The matter is ripe for disposition.

B. Standard Of Review

1. *Pro Se Litigants*

Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520–521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley,* 141 F.2d 552, 555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

In a § 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*,

165 F.3d 244, 247–48 (3d Cir. 1999)). *See also Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting *Higgins,* 293 F.3d at 688). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. *Gibbs v. Roman,* 116 F.3d 83 (3d Cir. 1997). *See, e.g., Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir. 1990) (same). Notwithstanding this liberality, pro se litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g., Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378, (5th Cir. 2002).

2. *Motion to Dismiss Pursuant to Rule 12(b)(6) - The Legal Standard*

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiently of the complaint. When reviewing a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.,* 62 F.3d 212, 220 (3d Cir. 2011), *cert. denied*, -- U.S. --, 131 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States made clear in *Bell Atlantic Corp. v. Twombly,* such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting *Twombly*, and providing further guidance on the standard set forth therein).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must conduct a three-step analysis when considering a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.,* 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675). First, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* at 130 (quoting *Iqbal,* 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id*. (quoting *Iqbal,* 556 U.S. at 679).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). In addition, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Lum v. Bank of America*, 361 F.3d 217, 222 (3d Cir. 2004) (in resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

Moreover, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint -

7

regardless of whether the plaintiff requests to do so - when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 251 (3d Cir. 2007).

    C.    <u>Discussion and Analysis</u>

        1.    *<u>Claims Against Defendant Harper</u>*

Plaintiff's claims against Defendant Harper are stated in one paragraph of the amended complaint:

> On or about December 21, 2012, I had then filed a grievance complaint against Sgt. Coulter, Sgt. Nort and R.N. Humphreys for the erroneous and falsified misconduct and their alleged conduct of illegal searches. On January 4, 2013, I've then sent a request-slip to the Warden, Orlando Harper about the filing of my grievance and for the harassments, illegal strip-searches, erroneous and falsified charges, illegal cavity search and confinement in DHU without a disciplinary hearing. Orlando Harper ignored this request and failed to investigate the incidents. On May 24, 2013, I've written another request-slip to the Warden in great concerns of the grievances I had filed. Once again, Orlando Harper had ignored this request and failed to investigate the incidents.

Amended Complaint at 2.

The Court finds that Hughes' claims against Defendant Harper are facially deficient for a number of reasons. First, to the extent Hughes is complaining that Defendant Harper did not respond to his grievance, Hughes had no constitutional right to any response from Defendant Harper at all. The Fourteenth Amendment does not guarantee inmates a right to an investigation or a response from prison officials as to administrative grievances (or to any replies by prison officials to inmates' other complaints or demands of a grievance nature). *See, e.g., Pressley v. Beard,* 266 F. App'x 216 (3d Cir. 2008) (per curiam) (finding that prison officials cannot be held liable based solely on their failure to take corrective action when grievances or investigations were referred to them); *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D.Pa. 1997), *aff'd*, 142 F.3d 430 (3d Cir. 1998); *McGuire v. Forr*, 1996 WL 131130 (E.D.Pa. Mar. 21, 1996), *aff'd*, 101 F.3d

8

691 (3d Cir. 1996). Harper's failure to respond to Hughes' request and grievance appeal would only be relevant to an exhaustion analysis, which is not an issue at this early stage in the litigation.

Furthermore, if construed as a First Amendment allegation, rather than a Fourteenth Amendment one, an assertion that an official failed to respond to an inmate's grievance also fails to state a cognizable claim. *See Minnesota State Bd. for Community Colleges v. Knight*, 465 U.S. 271, 285 (1984). "Nothing in the First Amendment or in . . . case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals communications." *Id.; see also Foraker v. California*, 501 F.3d 231, 237 (3d Cir. 2007) (pointing out that the courts "have never held . . . that a report of a . . . misconduct . . . constitutes 'petitioning activity' " and citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 230-21 (3d Cir. 2006)).

For these reasons, it is recommended that the motion to dismiss Plaintiff's claims against Harper be granted. Given that the Court has already provided Plaintiff with an opportunity to amend, the Court is not required to provide him with further leave to amend as further amendment would be futile. *Shelley v. Patrick,* 481 F. App'x 34, 36 (3d Cir. 2012).

2. *Claims Against the County Defendants*

a. Strip Searches

A prisoner's challenge to a strip search may be cognizable under 42 U.S.C. § 1983 through the Fourth or Eighth Amendments. *See Gutridge v. Chesney*, Civ.A. 973441, 1998 WL 248913, *4 (E.D.Pa. 1998) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). To raise a Fourth Amendment claim, the prisoner must allege that the strip search was unreasonable. *See Payton v. Vaughn*, 798 F. Supp. 258, 261–62 (E.D.Pa.1992). Where a prisoner alleges that the strip

search was conducted in a physically abusive manner, the Eighth Amendment applies. *See Jordan v. Cicchi*, 428 Fed. App'x 195, 199–200 (3d Cir. 2011) (explaining that an excessive force claim arising from a strip search may proceed under either the Fourth Amendment or the Eighth Amendment, but the latter is "the primary source of protection after an individual's conviction"); *Robinson v. Ricci*, 2012 WL 1067909, *17 n.6 (D.N.J. 2012) (stating that, in addition to a possible Fourth Amendment violation, the "Eighth Amendment may be implicated where the strip search or visual body cavity search was conducted in a brutish and unreasonable manner"). The amended complaint in this case states that Hughes brings his claims under the Fourth and Eighth Amendments.

Although strip searches constitute a "significant intrusion on an individual's privacy," *see United States v. Whitted*, 541 F.3d 480, 486 (3d Cir. 2008), where officials conduct such searches in a <u>reasonable manner</u> to maintain security and to prevent the introduction of contraband or weapons in the facility, strip searches do not violate the Fourth Amendment. *See Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 621 F.3d 296, 309-11 (3d Cir. 2010), aff'd, -- U.S., 132 S.Ct. 1510, 1516-17 (2012) (emphasis added). The relevant test for ascertaining the reasonableness of a search "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). In applying this balancing test, the Court "must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559.

The factual circumstances surrounding the searches of Plaintiff's body, as alleged in the amended complaint, raise plausible, substantive questions as to the reasonableness and necessity of those searches, as well as whether excessive force was used. Only further factual discovery

into the circumstances and nature of the searches performed will reveal whether in fact Defendants' acts were reasonable and/or conducted in an abusive fashion or with excessive force.[5] Therefore, it is recommended that the County Defendants' motion to dismiss be denied on Plaintiff's Fourth and Eighth Amendment claims alleging "illegal" strip searches.

b. Retaliation and Conspiracy

The amended complaint contains allegations that the County Defendant submitted a false misconduct report[6] and filed criminal charges against Hughes in retaliation for his refusal on December 19, 2012 to comply with the order to submit to an "illegal" strip search. Additionally, the amended complaint contains allegations that the County Defendants conspired to deprive Hughes of his constitutional rights.

The Court recommends that the County Defendants' motion to dismiss Hughes' retaliation and conspiracy claims be denied because these claims cannot be resolved on the pleadings, but rather must await a summary judgment motion. Both claims focus on factual

---

[5] As explained by the Court of Appeals for the Third Circuit, "the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage [ ]' but . . . 'calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 230–34 (internal citations omitted).

[6] Provided that a prisoner is afforded due process protections during the disciplinary hearing process, it is well settled that a claim that a misconduct report was false, standing alone, does not state a valid cause of action. As the United States Court of Appeals for the Third Circuit has aptly observed: "[F]iling false disciplinary charges does not itself violate a prisoner's constitutional rights, so long as procedural due process protections were provided. *See e.g., Freeman v. Rideout*, 808 F.2d 949, 952–53 (2d Cir. 1986) (the filing of false charges does not constitute a claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the charges); *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984)." *Richardson v. Sherrer*, 344 F. App'x 755, 757–758 (3d Cir. 2007). *See also Booth v. Pence*, 141 F. App'x 66 (3d Cir. 2005); *Smith v. Mensinger*, 293 F.3d 641, 653–54 (3d Cir. 2002). In this case, Hughes contends, through his amended complaint, that he was afforded no procedural due process protections.

matters relating to the County Defendants' actions and intent. Hughes alleges facts which would permit an inference that Defendants' actions were retaliatory and/or part of a conspiracy to violate his constitutional rights. The Court is bound by these well-pleaded facts at this stage of the proceedings. Therefore, the procedural posture of this case, which comes before the Court on a motion to dismiss, simply does not permit definitive judgments on the legal and factual inquiry which lies at the heart of these two claims.

The Court recognizes that ultimately Hughes' allegations may be exceedingly thin reeds upon which to rest retaliation and conspiracy claims, particularly if the undisputed facts otherwise demonstrate that there was a justification for the actions taken here, or that Hughes' refusal does not constitute protected activity. However, the Court is mindful of the fact that at this stage of the litigation, it must accept as true all of the well-pleaded allegations in the complaint. Therefore, at this juncture, the Court is limited to an assessment of the pleadings themselves. It is recommended that the motion to dismiss should be denied without prejudice to the filing of a properly documented summary judgment motion addressing these claims.

    c.    Malicious Prosecution

Hughes, through his amended complaint, contends that County Defendants Kass, Nort, Coulter, and Kearns filed false criminal charges against him.[7] To establish a malicious prosecution claim under section 1983, Hughes must show that (1) Defendants initiated a criminal proceeding; (2) the criminal proceeding ended in Hughes favor; (3) the proceeding was initiated without probable cause; (4) the Defendants acted maliciously or for a purpose other than bringing Hughes to justice; and (5) Hughes suffered deprivation of liberty interest consistent

---

[7] The amended complaint asserts that Michael Opferman violated Hughes' Fourteenth Amendment rights by signing the criminal complaint against Plaintiff. *See* Amended Complaint at 1 and 3. However, the amended complaint does not name Operferman as a defendant.

with the concept of seizure as a consequence of a legal proceeding. *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007); *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003).

The amended complaint alleges that Hughes was charged with (i) possession of a controlled substance; (ii) possession of a controlled substance with intent to deliver; and (iii) possession of a contraband by an inmate. *See* also Criminal Docket, Court of Common Pleas of Allegheny County, Docket Number: CP-02-CR-0003666-2013. The County Defendants contend that this claim should be dismissed because the amended complaint does not allege that the criminal proceedings related to these charges ended in Hughes' favor. Defs' Br. at 10, ¶ 45.

However, the public docket from Hughes' criminal case reflects that on January 26, 2015, Judge David R. Cashman granted Hughes' motion to suppress and the case was nolle prossed on February 17, 2015.

It is well established that "formal abandonment of the proceedings by the public prosecutor[,] may satisfy the favorable termination prong." *Malcomb v. McKean*, 535 F. App'x 184, 185-86 (3d Cir. 2013). However, "[a] *nolle prosequi* disposition is a favorable termination unless the accused has entered into a compromise or surrendered something of value to obtain that outcome." *Id*. at 186. On the limited record before the Court, it appears that Hughes' criminal proceedings were nolle prossed based on a favorable motion to suppress ruling; however, discovery is needed to ascertain why the charges against Hughes were dismissed. As such, the Court recommends denying without prejudice the County Defendants' motion to dismiss Hughes' malicious prosecution claim.

  d.  *Due Process - Placement in Disciplinary Housing Unit*

According to the amended complaint, as a result of the "false" misconduct report, Hughes was held in the DHU for sixteen (16) days without a disciplinary hearing. Defendants did not

13

address this issue in their motion to dismiss; therefore, it is recommended that this claim proceed.

e. *Qualified Immunity*

Finally, the County Defendants argue that they are entitled to qualified immunity because "[a]rrests, searches, and the use of force are generally within the definition of the term 'discretionary function'." Defs' Br. at 16.

Qualified immunity by definition relies on the notion of good faith and is an affirmative defense in actions pleaded under the Constitution and laws of the United States, including 42 U.S.C. § 1983. *Harlow v. Fitzgerald,* 457 U.S. 800, 815 (1982). "The doctrine of qualified immunity shields government officials who perform discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (quoting *Harlow*, 457 U.S. at 818).

The determination of whether an officer is entitled to qualified immunity involves a two-prong test: (1) the Court asks whether the facts, taken in the light most favorable to the nonmoving party, show that the officer violated a constitutional right; and (2) the Court asks whether that right was clearly established at the time of the officer's actions. *Id*.

Hughes' amended complaint raises sufficient questions of fact as to whether the individual County Defendants had knowledge and involvement with the bodily searches alleged in the amended complaint. As such, at this point in the litigation, the individual County Defendants could still be found to have played a role in Hughes' constitutional rights being violated. Therefore, the Court recommends that the County Defendants have not yet become entitled to qualified immunity as a defense.

### III. Conclusion

For the reasons stated above, it is respectfully recommended that the Motion to Dismiss filed by the County Defendants be granted in part and denied in part. It is recommended that the motion to dismiss be granted as to Defendant Harper, but in all other respects, the motion should be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen (14) days after date of service to file objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days after date of service to respond to the objections. Failure to file Objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

Dated: October 2, 2015

cc: GREGORY L. HUGHES
444 Fourth Street
Braddock, PA 15104
(via U.S. First Class Mail)

Paul R. Dachille
Allegheny County Law Department
(via ECF electronic notification)