# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREGORY L. HUGHES,<br><br>    Plaintiff,<br><br>          v.<br><br>SGT. KASS, SGT. COULTER,<br>SGT. NORT, R.N. HUMPHREYS,<br>And INSPECTOR KEARNS,<br><br>    Defendants. | Civil Action No. 2:14-cv-00585<br><br>United States District Judge<br>Davis S. Cercone<br><br>United States Magistrate Judge<br>Cynthia Reed Eddy |

## REPORT AND RECOMMENDATION

**I.    Recommendation**

This is a civil rights action under 42 U.S.C. § 1983 initiated, *pro se*, by Gregory L. Hughes ("Plaintiff") arising out of a series of allegedly "illegal" strip searches that took place when he was incarcerated at the Allegheny County Jail ("ACJ"). The matter was referred to the undersigned for pretrial proceedings in accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Rules 72.C and 72.D of the Local Rules of Court for the Western District of Pennsylvania. Pending before the Court is a Motion for Summary Judgment filed by Sgts. Kass, Coulter, and Nort; Inspector Kearns; and R.N. Humphreys ("Defendants"). (ECF No. 57). For the reasons that follow, it is respectfully recommended that the motion be granted.

**II.    Report**

    A.    <u>Relevant Factual and Procedural Background</u>

On November 2, 2012, Plaintiff was arrested on a probation violation and taken to ACJ. When he arrived at the jail, he was subjected to an initial strip search – the constitutionality of which he does not challenge – and placed in a holding cell. On December 4, 2012, while being escorted to a court appearance, Plaintiff was subjected to another routine strip search by a

1

corrections officer ("CO") and then placed in a holding cell. Shortly thereafter, he claims, Sgt. Kass ordered him out of the holding cell and conducted an "illegal" strip search, claiming that he had received a "tip" that Plaintiff possessed drugs. Plaintiff claims that the same sequence of events – lawful routine search followed by unlawful search – happened on December 11, 2012, though he has not described the manner in which these alleged searches took place. According to Plaintiff, the searches did not uncover any contraband or drugs, and he never filed a grievance related to either search.

On December 19, 2012, Sgt. Kass informed Sgts. Nort and Coulter that a black male had drugs in Pod 2f, cell 215, which was Plaintiff's cell. After receiving the tip, Sgts. Nort and Coulter approached Plaintiff on the pod and escorted him back to his cell to conduct a search. Once they got to the cell, the officers ordered Plaintiff to strip. At first, Plaintiff complied, but after removing his shirt, he put his fists up and refused to continue undressing, telling the officers "we're going to have to duke it out." (Pl.'s Dep. at 34:8; [ECF No. 60-2](#)). Sgts. Nort and Coulter responded, "We're not here to fight. We have to take you to the hole for refusing a strip search." (*Id.* at 34:12-15). Sgt. Nort then placed Plaintiff in handcuffs, while Sgt. Coulter "was going around in the cell, looking around." (*Id.* at 34:21-22). According to Plaintiff, Sgt. Coulter found a "round ball" containing drugs in a crack in the wall. Sgt. Coulter asked Plaintiff whether the drugs were his, and he said they were not. (*Id.* at 35:4-5). Sgt. Nort allegedly responded, "[since] you refused to strip, then we're going to say [the drugs are] yours." (*Id.* at 35:6-8). Plaintiff claims, without citation to any evidence in the record, that "Sgt. Coulter and Sgt. Nort had possession of the contraband [] which was found/or planted inside [the cell] before [he] was cuffed and escorted to the [] Infirmary." ([ECF No. 65](#) ¶ 14).

Thereafter, Plaintiff was taken to the infirmary, where he was placed in a small cubicle, and R.N. Humphreys was ordered to perform a rectal examination. ([ECF No. 65](#) ¶ 17). To that end, Sgt. Coulter "bear hugged Plaintiff" and bent him onto an examining table, while Sgt. Nort pulled down Plaintiff's pants. "R.N. Humphreys then put a gloved finger into [Plaintiff's] anus in search of additional contraband/drugs[.]" (*Id.* ¶ 19). According to Plaintiff, nothing was found.[1]

Following the search in the infirmary, Plaintiff was escorted to the Disciplinary Housing Unit ("DHU") and placed in a cell, at which point another strip search was performed, the constitutionality of which Plaintiff does not challenge. (*Id.* ¶ 20). Later that day, he was served with an allegedly "false" misconduct, charging him with possession of contraband. The next day, Plaintiff was served with a three-count criminal complaint that charged him with (i) manufacture, delivery or possession with intent to manufacture or deliver in violation of 35 P.S. § 780-113, §§ A30; (ii) intentional possession of controlled substance in violation of 35 P.S. § 780-113, §§ A16; and (iii) possession of controlled substance, contraband / inmate, in violation of 18 P.S. § 5123, §§A.2. *See* Criminal Docket, Court of Common Pleas of Allegheny County, Docket Number: CP-02-CR-0003666-2013. The criminal charges were filed by Michael Opferman of the Allegheny County Police Department.

Plaintiff was held in the DHU from December 19, 2012, through January 3, 2013, allegedly without a disciplinary hearing. On December 21, 2012, Plaintiff filed a grievance

---

[1] Plaintiff's version of events differs from that which is set forth in the incident report completed by Sgt. Nort. According to the incident report, after Plaintiff started to remove his shirt, Sgt. Nort saw him "place his hands down his pants in his genital area and then quickly try and move his hand to his rectum area." ([ECF No. 66 at 5](#)). The officers ordered Plaintiff to stop and placed him in handcuffs. (*Id.*). Sgt. Nort then "pulled the waist band back on [Plaintiff's] pants and could see what appeared to be a piece of plastic sticking out from [Plaintiff's] rectum area." (*Id.*). According to Sgt. Nort, R.N. Humphreys uncovered the drugs in "a plastic bag in between [Plaintiff's butt cheeks." (*Id.*). There is no mention in the incident report of drugs being found in a crack in the wall. (*Id.*).

3

against Sgt. Coulter, Sgt. Nort, and R.N. Humphreys "for the harassment and illegal searches and cavity search." (ECF No. 63 ¶ 15).

Plaintiff remained in ACJ while his charges were pending because he could not post the $25,000 bond. On January 25, 2015, Judge Cashman of the Allegheny County Court of Common Pleas suppressed the evidence against Plaintiff. As a result, the charges were *nolle prossed*.

Plaintiff initiated this action on May 7, 2014, by submitting his complaint and an incomplete motion to proceed *in forma pauperis*. (ECF No. 1). At that time, Plaintiff was still incarcerated at ACJ. On May 9, 2014, the Court directed Plaintiff to submit a signed form authorizing payments from his inmate account. On May 20, 2014, Plaintiff filed his authorization and also notified the Court that he had been released from ACJ. On June 24, 2014, the motion to proceed *in forma pauperis* was granted (ECF No. 5), and the complaint was filed. (ECF No. 6). Named as Defendants were Orlando Harper, the Warden of ACJ; Sgts. Kass, Coulter, and Nort; Inspector Kearns; and R.N. Humphreys.

On September 10, 2014, Defendants filed a motion to dismiss or for a more definite statement, which the Court granted, thereby ordering Plaintiff to file an amended complaint. Plaintiff then filed a "Motion to Amend Civil Complaint" (ECF No. 33), which despite its title was, in substance, an amended complaint not a motion to permit amendment. The Court granted the request and ordered that the motion be deemed an amended complaint. That filing remains the operative pleading. As the Court previously construed it, the amended complaint alleges that the Defendants conducted one or more illegal, forceful strip searches and manual cavity searches; engaged in malicious prosecution; retaliated by filing a false misconduct report and false criminal charges against him; did not responded to his prison grievances; and detained him in the Disciplinary Housing Unit ("DHU") for sixteen (16) days without a disciplinary hearing.

On June 9, 2015, Defendants filed a motion to dismiss the amended complaint for failure to state a claim. (ECF No. 36). The Court granted the motion with respect to Defendant Harper but denied it with respect to the other Defendants. (ECF No. 44). Following the close of discovery, Defendants filed the pending motion for summary judgment, to which Plaintiff has filed a response. (ECF Nos. 57-59, 63-66). The motion is ripe for disposition.

B. Standard of Review

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (citation omitted). In deciding a motion for summary judgment, the Court's function is not to weigh the evidence, to determine the truth of the matter, or to evaluate credibility. *See Montone v. City of Jersey City, et al.*, 709 F.3d 181 (3d Cir. 2013). Rather, the Court is only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *Id.* In evaluating the evidence, the Court must interpret the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-movant. *Watson v. Abington Twp.*, 478 F. 3d 144, 147 (3d Cir. 2007).

C. Discussion and Analysis

1. *Strip Searches*

The Third Circuit Court of Appeals has held that the Fourth Amendment applies to strip searches in the prison setting. *Parkell v. Danberg*, 833 F.3d 313, 325 (3d Cir. 2016) (holding that the Fourth Amendment "grants inmates a limited right of bodily privacy, subject to reasonable intrusions necessitated by the prison setting"). An excessive force claim arising from a strip

search may also implicate the Eighth Amendment. *See Jordan v. Cicchi*, 428 F. App'x 195, 199–200 (3d Cir. 2011). To recover under either amendment, the prisoner must establish that the strip search was unreasonable. *See Payton v. Vaughn*, 798 F. Supp. 258, 261–62 (E.D. Pa. 1992); *Robinson v. Ricci*, 2012 WL 1067909, at *17 (D.N.J. Mar. 29, 2012) (explaining that "Eighth Amendment may be implicated where the strip search or visual body cavity search was conducted in a brutish and unreasonable manner"). The test for ascertaining the reasonableness of a search "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). In applying this balancing test, the Court "must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.*

While digital rectal examinations "entail an intrusion greater than the 'severe if not gross interference with a person's privacy that occurs when guards conduct a visual inspection of body cavities[,]'" they are not *per se* unreasonable. *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 42-44 (1st Cir. 2009) (quoting *Bonitz v. Fair*, 804 F.2d 164, 172 (1st Cir. 1986)). Rather, "physical rectal examinations of prisoners, when carried out by trained medical staff under sanitary conditions, are at times 'a necessary and reasonable concomitance of . . . imprisonment.'" *Id.* (quoting *Daughtery v. Harris*, 476 F.2d 292, 295 (10th Cir. 1973)). Likewise, because "[p]reventing drugs and weapons that can be smuggled through the alimentary canal or hidden in the rectal cavity is a legitimate penological concern, [d]igital rectal searches are a legitimate means of maintaining order and do not violate the Eighth Amendment as long as they are conducted in a reasonable manner." *Green v. Hallam*, 105 F. App'x 858, 862 (7th Cir. 2004) (citing *Wolfish*, 441 U.S. at 559; *Johnson v. Phelan*, 69 F.3d 144, 146 (7th Cir. 1995)).

Plaintiff purports to challenge the searches that took place on December 4 and December 11, 2012, in addition to the search on December 19, 2012. However, aside from his own testimony that these two searches did, in fact, take place, that they were preceded by a "tip" that he had drugs, and that they were "unfounded," Plaintiff has not offered any evidence with respect to the circumstances surrounding the searches. Thus, the Court cannot engage in the necessary balancing of interests to determine the constitutionality of what allegedly transpired. For that reason, the Court recommends that summary judgment be granted for Defendants as to any claims arising out of the alleged searches on December 4 and December 11, 2012.

Plaintiff fares no better with his claim arising out of the search on December 19, 2012. First, there was an adequate justification for the search: Sgts. Nort and Coulter had received a tip that Plaintiff possessed drugs in his cell. *See Wolfish*, 442 U.S. at 559 (noting that "[s]muggling of money, drugs, weapons, and other contraband is all too common an occurrence" in detention facilities); *Pereira-Castillo*, 590 F.3d at 43 (explaining that "locating and removing contraband from the prison system" is a "legitimate penological objective"). Second, the manner and the place where the search was conducted leads to the conclusion that it was reasonable. In particular, the rectal examination was conducted by a trained nurse in a private cubicle in ACJ's infirmary, and there is no evidence that it was performed in an unhygienic manner – R.N. Humphreys was wearing a glove – or within view of other inmates. *See id.* ("In reviewing the reasonableness of body-cavity searches, courts have stressed that they were conducted in a private area and in a hygienic manner."). Moreover, although Plaintiff claims that he was "bear-hugged" onto the examination table, the Court concludes that such conduct was not so abusive or unprofessional as to render the totality of Defendants' conduct unreasonable. Indeed, just prior to this search, Plaintiff had told Sgts. Coulter and Nort that he was ready to "duke it out" with them,

7

so some degree of force was likely necessary to assure Plaintiff's compliance. Accordingly, it is recommended that summary judgment be granted for Defendants Plaintiff's Fourth Amendment claim arising out of the search on December 19, 2012.

His Eighth Amendment claim fails for those same reasons. Even assuming that Defendants used some force against Plaintiff, as he has alleged, the Court cannot conclude that the degree of force was excessive. *See Lim v. Cruz*, 2015 WL 1185982, at *7 (M.D. Pa. Mar. 13, 2015) ("[a]s the complaint does not allege that Defendants conducted the search in a physically abusive fashion or with excessive force, Plaintiff has failed to state an Eighth Amendment claim for relief"). And although Plaintiff claims that he "suffered extreme humiliation, harassment, and degradations," "neither the discomfort that accompanies the performance of an anal probe nor the humiliation Plaintiff suffered as a consequence give[s] rise to an Eighth Amendment claim." *Story v. Wetzel*, 2016 WL 6948400, at *11 (W.D. Pa. Nov. 28, 2016). Therefore, summary judgment should be granted as to this claim.

    2.    *Retaliation*

To establish a claim for retaliation, a prisoner must prove that (1) he engaged in constitutionally protected conduct, (2) he suffered "adverse action," and (3) there is "a causal link between the exercise of his constitutional rights and the adverse action." *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Plaintiff claims that Defendants retaliated against him by filing a false misconduct and criminal charges against him after he refused to submit to the strip search in his cell on December 19, 2012. However, "Plaintiff had no constitutionally protected right to disobey orders from [Defendants]." *Wilson v. Budgeon*, 2007 WL 464700, at *6 (M.D. Pa. Feb. 13, 2007); *see also Johnson v. Carroll*, 2012 WL 2069561, at *34 (E.D. Cal. June 7, 2012) ("Plaintiff's protected First Amendment recourse for challenging [the] search . . . was to file an

administrative grievance."). Because Plaintiff's refusal to undergo the search was not constitutionally protected conduct, summary judgment should be granted as to this claim.

        3.      *Malicious Prosecution*

To establish a malicious prosecution claim under § 1983, Plaintiff must show that (1) Defendants initiated a criminal proceeding; (2) the criminal proceeding ended in Plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) Defendants acted maliciously or for a purpose other than bringing Plaintiff to justice; and (5) Plaintiff suffered deprivation of a liberty interest consistent with the concept of seizure as a consequence of a legal proceeding. *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007); *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003). Defendants argue that Plaintiff cannot satisfy the second element because the criminal charges against him were not resolved in a manner that suggests he was innocent of the crimes charged. The Court agrees.

As the Third Circuit Court of Appeals has explained, "while 'a grant of *nolle prosequi* can be sufficient to satisfy the favorable termination requirement for malicious prosecution, not all cases where the prosecutor abandons criminal charges are considered to have terminated favorably." *Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir. 2002) (quoting *Hilfirty v. Shipman*, 91 F.3d 573, 579-80 (3d Cir. 1996)). Instead, "[a] *nol pros* signifies termination of charges in favor of the accused 'only when their final disposition is such as to indicate the innocence of the accused.'" *Id.* (quoting *Restatement (Second) of Torts*, § 660, cmt. a (1976)). In this case, the *nol pros* does not, in any way, indicate that Plaintiff was innocent of the crimes charged. Rather, the charges were dropped after Judge Cashman suppressed the evidence against Plaintiff. This is not sufficient to satisfy the favorable-termination requirement. *See Heidelberg v. City of Erie Police*

*Dep't*, 2015 WL 1431058, at *4 (W.D. Pa. Mar. 27, 2015). Thus, Defendants' motion should be granted with respect to the malicious prosecution claim.

4. *Due Process*

It is not clear whether Plaintiff is still pursuing a Fourteenth Amendment due process claim based on the allegedly "false" misconduct that resulted in a 16-day stay in the DHU. He has not developed any evidence regarding the disciplinary proceedings (or alleged lack thereof), nor has he dedicated any space in his filings to advancing an argument as to how the proceedings fell below that which he believes was required. In any event, it is clear that such a short stay in disciplinary housing does not "constitute an 'atypical and significant hardship'" such that due process protections were triggered. *See, e.g.*, *Toussaint v. Good*, 276 F. App'x 122, 124 (3d Cir. 2008) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) (holding that "sixty- and ninety-day stays in the RHU . . . do not constitute an 'atypical and significant hardship' to trigger due process protections"); *Griffin v. Vaughn*, 112 F.3d 703 (3d Cir. 1997) (placement of a prisoner in administrative custody for 15 months did not impose atypical and significant hardship on prisoner). Accordingly, this claim fails as a matter of law, and summary judgment should be granted in Defendants' favor.

D. Conclusion

For the reasons stated above, it is respectfully recommended that the Motion for Summary Judgment filed by Sgts. Kass, Coulter, and Nort; Inspector Kearns; and R.N. Humphreys should be granted.

Any party is permitted to file Objections to this Report and Recommendation to the assigned United States District Judge. In accordance with 28 U.S.C. § 636(b), Fed.R.Civ.P. 6(d) and 72(b)(2), and LCvR 72.D.2, Plaintiff, because he is a non-electronically registered party,

may file objections to this Report and Recommendation by **February 21, 2017**, and Defendants, because they are electronically registered parties, may file objections by **February 16, 2017.** The parties are cautioned that failure to file Objections within this timeframe "will waive the right to appeal." *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).

                                                s/ Cynthia Reed Eddy
                                                Cynthia Reed Eddy
                                                United States Magistrate Judge

Dated: February 2, 2017

cc:     **GREGORY L. HUGHES**
        444 Fourth Street
        Braddock, PA 15104
        (via U.S. First Class Mail)

        **John A. Bacharach**
        Allegheny County Law Department
        (via ECF electronic notification)